## Dominick Shemaitis, Appellant, v. Anton Kasputis and Frank Butkus, Executors of the Estate of Frank Yurkman, Deceased, Appellees.

### Gen. No. 34,291.

Opinion filed May 26, 1930. Rehearing denied June 9, 1930.

HERMANN P. HAASE, for appellant.

THEODORE B. JANOVSKY, for appellees.

MR. PRESIDING JUSTICE McSURELY delivered the opinion of the court.

Plaintiff appeals from a judgment disallowing his claim against the estate of Frank Yurkman, deceased, on a promissory note for the sum of $1,500, dated December 1, 1921, payable on demand.

The claim was first filed in the probate court and there disallowed. On appeal to the circuit court the validity of the claim was tried by the court, resulting in a finding against the plaintiff. The signature of Frank Yurkman on the note is not denied but the executors claim that the indebtedness represented

thereby was absorbed in a subsequent transaction in which plaintiff bought certain stock from Yurkman for $15,000.

Plaintiff and Yurkman were employed by the Peoples Furniture company and had been intimate friends for 35 years. December 2, 1921, Yurkman executed the note in question. Although there were no indorsements on the note, plaintiff testified that interest was paid up to 1926. September 18, 1927, plaintiff bought from Yurkman 100 shares of the capital stock of the Peoples Furniture company for $15,000 giving as part of the purchase price his note for $10,000 due one year after date, bearing interest at 7 per cent per annum. Plaintiff testified that he paid the balance of $5,000 in cash to Yurkman, raised by drawing $2,000 from his bank and borrowing $3,000 from a cousin. Plaintiff also testified that he requested Yurkman to allow him $1,500, the amount of Yurkman's note, in the sale but Yurkman told him he needed $5,000 cash.

Pertinent to this situation is the language in 48 C. J. 689, par. 191:

"Even though it is proved or admitted that there was at one time an indebtedness from one person to another, subsequent acts of the persons concerned, inconsistent with the continued existence of such indebtedness, may raise a rebuttable presumption that the debt has been paid. Thus, where one person pays money to another or executes and delivers to such other his written obligation for the payment of money, it will be presumed that any pre-existing indebtedness of the latter to the former has been paid." *Lindsay v. McCormick,* 82 Va. 479; *Coe v. Anderson,* 92 Iowa 515, 61 N. W. 177; *McMichan's Estate,* 33 Pa. County Reports 273. We would, therefore, naturally expect that when plaintiff bought the stock from Yurkman for $15,000, the $1,500 demand note held by plaintiff would be taken into consideration.

In April, 1928, Yurkman was taken sick and was in the Burnside Hospital. Witnesses testified to a conversation with him in the hospital on April 22, at which were present plaintiff, Frank Butkus (subsequently appointed executor), Frank Stasulis (a real estate broker) and plaintiff's son. Butkus and Stasulis testified, in substance, that when plaintiff came into the room he had some insurance papers and that he said to Yurkman, "I forgot this, to bring in the note for $1,500 for you," to which Yurkman replied, "That's all right, you bring that note another time; it isn't worth anything." Stasulis says that Yurkman replied, "The matter is settled. You bring it any time." Yurkman died April 29, 1928, but although plaintiff attended the funeral and knew the executors and had subsequent conversations with them he did not make any claim on account of the $1,500 note until his own note for $10,000 became due to the estate.

There were inconsistencies in the testimony of witnesses for the plaintiff. William Makevetzki, secretary of the Peoples Furniture Company, of which plaintiff was vice-president, first testified as to a conversation with Yurkman about two months before he died, which would be about February, 1928, in which Yurkman said, in substance, that he had some heavy obligations to meet and "I owe Mr. Shemaitis a note and I need some money," and requested that all the money coming to him from the company, about $3,000, be paid to him, Yurkman, on New Year's Day. This witness subsequently testified that this conversation was in November, 1927, and that Yurkman got his money after New Year's. It appears, however, from the testimony of Anton Kasputis, one of the executors of Yurkman's estate, that the money due Yurkman from the furniture company was not paid until some time in August or September, 1928, after Yurkman's death. Again, the son of plaintiff testified that his

father had paid the bill for Yurkman's insurance and his version of the conversation at the hospital was that, when Yurkman referred to the matter as settled and all right and paid, he was referring to the bill for the insurance. This witness repeated that the bill for insurance was paid by his father, the plaintiff, but the plaintiff contradicted him by testifying that he did not pay the insurance bill and did not bring the receipted bill to Yurkman at the hospital.

The trial judge who saw the witnesses and heard them testify was in a much better position than are we to pass upon their credibility. Both the probate court judge and the circuit court judge gave credence to the testimony of Butkus and Stasulis. Their testimony is consonant with what would be the reasonable expectation from the situation, namely, that the $1,500 note was taken into account in the purchase of the $15,000 worth of stock. In any event, we cannot say that the finding of the trial court is manifestly against the weight of the evidence. The judgment will therefore be affirmed.

*Affirmed.*

MATCHETT and O'CONNOR, JJ., concur.